UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MICHAEL RIGGS                                                    PLAINTIFF


v.                                          CIVIL ACTION NO. 3:17-cv-00183-DW


NANCY A. BERRYHILL,
Acting Commissioner of Social Security                           DEFENDANT

## MEMORANDUM OPINION

Plaintiff Michael Riggs has filed a complaint pursuant to 42 U.S.C. §405(g) to obtain

judicial review of a final decision of the Commissioner of Social Security that denied his

applications for disability insurance benefits (DIB) and supplemental security income (SSI).

Riggs applied for DIB and SSI on July 26 and August 13, 2013, respectively, alleging that he

was disabled as of May 24, 2013, due to degenerative disc disease of the lumbar spine, diabetes

mellitus accompanied by peripheral neuropathy, osteoarthritis of the hands, coronary artery

disease, hypertension, COPD/ asthma and obesity (Tr. 131, 324, 326). The Commissioner

denied Riggs' claims on initial consideration (Tr. 221-222) and on reconsideration (Tr.249-250).

Riggs requested a hearing before an Administrative Law Judge (ALJ) (Tr. 275-76).

ALJ William C. Zuber conducted a hearing in Louisville, Kentucky, on March 2, 2016

(Tr. 152-202). Riggs attended with his attorney, Ms. Sykes (Tr. 152). Riggs and vocational

expert (VE) Robert Piper testified at the hearing (Tr. ). Following the conclusion of the hearing,

ALJ Zuber entered a hearing decision on August 24, 2016 that found Riggs is not disabled for

the purposes of the Social Security Act (Tr. 129-146).

In his adverse decision, ALJ Zuber made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since May 24, 2013, the alleged onset date (20 C.F.R. 404.1571, *et seq.* and 416.971, *et seq.*).

3. The claimant has the following severe impairments: lumbar spine degenerative disc disease, diabetes mellitus with lower extremity peripheral neuropathy, osteoarthritis of the hands, coronary artery disease, hypertension, chronic obstructive pulmonary disease (COPD) /asthma, and obesity (20 CFR 404.1520(c) and 416.920(c)). (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except he would require the option to change positions between sitting and/or standing every 30 to 45 minutes: he could never crawl, kneel, balance, or climb ladders, ropes, or scaffolds; he could no more than occasionally stoop, crouch, and climb ramps or stairs; he could no more than occasionally reach overhead; he could no more than frequently use the hands; he would be limited to no concentrated exposure to extremes of temperature, vibration, dust, fumes, gases, or odors; he could have no exposure to dangerous machinery or unprotected heights; and he would require a cane for ambulation but not standing.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born on January 15, 1969, and was 44-years-old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8. The claimant has at least a high-school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, App. 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national

economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from May 24, 2013, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 129-146).  Riggs sought review of the hearing decision by the Appeals Council (Tr. 121-123).  The Appeals Council denied his request for review after receiving additional evidence (DN 10-60), finding no reason under the Rules to review ALJ Zuber's decision (Tr. 1-8).  The present lawsuit followed.


### The 5-Step Sequential Evaluation Process.

Disability is defined by law as being the inability to do substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See, 20 CFR §§ 404.1505(a)(4), 416.905(a).  To determine whether a claimant for DIB or SSI benefits satisfies such definition, a 5-step evaluation process has been developed. 20 CFR §§ 404.1520, 916.920(a).  At step 1, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the Commissioner will find the claimant to be not disabled.  See, 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(ii), 416.971.  *See, Dinkel v. Secretary*, 910 F2d, 315, 318 (6th Cir. 1990).

If the claimant is not working, then the Commissioner next must determine at step 2 of the evaluation process whether the claimant has a severe impairment or combination of severe impairments that significantly limit his or her ability to perform basic work activities.  See 20 CFR §§ 404.1520(a)(4)(ii),  416.920(a)(4)(ii).  If the impairments of the claimant are determined by the Commissioner to be non-severe, in other words, so slight that they could not result in a

finding of disability irrespective of a claimant's vocational factors, then the claimant will be determined to be not disabled at step 2. *See, Higgs v. Bowen*, 880 F.2d 960, 962 (6th Cir. 1988); *Mowery v. Heckler*, 771 F.2d 966, 971-72 (6th Cir. 1985).

If the claimant has a severe impairment or impairments, then the Commissioner at step 3 of the process will determine whether such impairments are sufficiently serious to satisfy the listing of impairments found in Appendix 1 of Subpart P of Part 404 of the federal regulations. 20 CFR §§ 404.1520(A)(4)(iii), 416.920(a)(4)(iii) The claimant will be determined to be automatically disabled without consideration of his or her age, education or work experience if the claimant's impairments are sufficiently severe to meet or equal the criteria of any impairment listed in the Appendix. *See*, *Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

When the severity of the claimant's impairments does not meet or equal the listings, then the Commissioner must determine at step 4 whether the claimant retains the residual functional capacity (RFC) given his or her impairments to permit a return to any of his or her past relevant work. 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See, Smith v. Secretary*, 893 F.2d 106, 109-110 (6th Cir. 1989). A claimant who retains the residual functional capacity, despite his or her severe impairments, to perform past relevant work is not disabled. 20 CFR §§ 404.1560(b)(3), 416.960(b)(3). The burden switches to the Commissioner at step 5 of the sequential evaluation process to establish that the claimant, who cannot return to his or her past relevant work, remains capable of performing alternative work in the national economy given his or her residual functional capacity, age, education and past relevant work experience. See, 20 CFR §§ 404.1520(a)(4)(v), 404.1560( c ), 416.920(a)(4)(v), 416.960( c ); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Herr v. Commissioner*, 203 F.3d 388, 391 (6th Cir. 1999).

Collectively, the above disability evaluation analysis is commonly referred to as the "5-step sequential evaluation process."

**Standard of Review**

Review of a decision of the Commissioner is governed by 42 U.S.C. § 405(g). The statute, and case law that interprets it, require a reviewing court to affirm the findings of the Commissioner if they are supported by substantial evidence and the Commissioner has employed the appropriate legal standard. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.). Substantial evidence is defined by the Supreme Court to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). *See also, Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1053 (6th Cir. 1983) (citing *Perales*). It is more than a mere scintilla of evidence or evidence that merely creates the suspicion of the existence of a fact, but must be enough evidence to justify a refusal to direct a verdict if the matter were tried to a jury. *Sias v. Sec'y of HHS*, 861 F.2d 475, 479 n. 1 (6th Cir. 1988).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Laskowski v. Apfel*, 100 F. Supp.2d 474, 482 (E.D. Mich. 2000). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the federal court even if the record might support a contrary conclusion. *Smith v. Sec'y of HHS*, 893 F.2d 106, 108 (6th

Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

### Issues for Review

Riggs in his Fact and Law Summary focuses his arguments on Finding of Fact No. 5 of the hearing decision (TR 136-144). ALJ Zuber in this finding determined that Riggs retains the residual functional capacity (RFC) to perform light work with a sit/stand option and the use of a cane for ambulation along with various other exertional limitations. (TR 136). Riggs now insists that, first, the ALJ did not give sufficient weight to the medical opinion of Dr.Siddiqui, Riggs' treating a rheumatologist, Dr. Colwell, Riggs chiropractor, and nurse practitioner Lisa Williams (DN 17, FL&S at pp. 14-18).

Dr. Siddiqui in his "Medical Statement Regarding Osteoarthritis" (TR 749-750) limited Riggs to lifting no more than 5 pounds, sitting for no more than 30 minutes at a time, and standing for no more than 15 minutes without interruption. (Id.). Dr. Colwell in his "Medical Statement Regarding Low Back Pain" similarly limited Riggs to standing or sitting for no more than 30 minutes at one time, lifting no more than 10 pounds frequently, and occasionally bending or stooping (TR 745). In his Statement Dr. Colwell also indicated that Riggs could work no more than two hours per day (Id.). Nurse Williams in her own "Medical Statement Regarding Diabetes" concluded that as a result of Riggs' neuropathy and skin breakdown he could work no more than two hours per day, lift no more than 5 pounds occasionally or frequently, stand for no longer than 15 minutes at a time, and sit for no longer than 30 minutes. (TR 748). In the

comments section of her Medical Statement nurse Williams explained that these limitations were "as reported by the patient." (Id.).

Riggs now argues that the ALJ failed to give appropriate weight to the above medical opinions contrary to the provisions of 20 C.F.R. §§ 404.1527(b) and 416.927(c)(2). According to Riggs, each of these opinions is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with substantial evidence of record so that the opinions should be accorded controlling weight by the ALJ under *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009). Because ALJ Zuber did not accord any of the three opinions controlling weight, Riggs maintains that the ALJ was required by *Wilson v. Comm'r,* 378 F.3d 541, 544 (6th Cir. 2004) to adequately explain the basis of his decision in this respect based on the length, nature and extent of the treatment relationship, the frequency of examination, the consistency of the medical opinion with the record and the specialization of the treating medical source. Even though neither his chiropractor nor nurse practitioner is considered to be an "acceptable medical source" under 20 C.F.R. §§ 404.1513 and 416.913, their opinions in Riggs's view were nonetheless entitled to substantial consideration via SSR 06-03p, 2006 WL 2329939 at*4-5 (SSA 2006).

Riggs now insists that he had a significant treating relationship with each of these three medical sources, all of whom examined Riggs on multiple occasions before they each completed their individual Medical Statements (TR 704-09, 720-29, 754-58, 770-75, 856-58). In contrast, the state agency physician, Dr. Harris, did not personally examine Riggs or have access to any of Riggs' treatment that occurred after January 2014 when Dr. Harris rendered his opinion. Riggs also points out that no treating source ever found his limitations to be less severe than those noted by Dr. Siddiqui, Dr. Colwell and nurse Williams. Accordingly, Riggs insists that ALJ

Zuber should have given substantial weight to their opinions, which he contends were not inconsistent with the medical evidence.

Riggs points out various portions of the medical records that he argues support this conclusion. Included among these examples are Dr. Siddiqui's treatment notes of July 22, 2015 at which time the doctor noted that Riggs continued to exhibit multiple psoriatic lesions on his arms, decreased sensation and reflexes in the extremities, tenderness in his sacroiliac joint, fatigue, mildly restricted straight leg raising and tender points associated with fibromyalgia (TR 704-05, 770-71). Thus, while Riggs did tell the doctor that his gabapentin had improved his neuropathy, the doctor's physical examination fully supports his conclusion that Riggs did not have the physical capacity to engage in substantial gainful activity.

Riggs also maintains that the ALJ is incorrect to the extent that his hearing decision notes that the plaintiff exhibited normal gait and consistently displayed negative straight leg raising; when in fact, review the record reflects mildly positive straight leg raising by Riggs when examined by Dr. Siddiqui on multiple occasions (TR 705, 771, 857). The same medical records also reflect that Riggs was observed by nurse Williams to use a cane or a walker for balance during the same time. (TR 665, 720, 722, 851). Such findings by Dr. Siddiqui, according to Riggs, fully support his medical opinion that Riggs would not be able to stand or walk for long enough to complete an eight-hour work day.

In his second argument, Riggs maintains that the ALJ erred in rejecting the credibility of his testimony concerning his pain and limitations, where such testimony was supported by substantial evidence. Riggs insists that the ALJ ran afoul of the provisions of SSR 16-3p, 2016 WL 1119029 at*3 (SSA 2016) in his application of the 2-step process for evaluating the testimony of a claimant. Riggs acknowledges that ordinarily the findings of an ALJ concerning

the credibility of a claimant's testimony are to be accorded great deference, *Rogers v. Comm'r*, 486 F.3d 234, 247 (6th Cir. 2007). That difference, however, Riggs explains does not allow the ALJ to rest his or her credibility finding merely on an intangible or intuitive notion of a claimant's credibility. In other words, the findings of the ALJ on the question of credibility must be supported by substantial evidence of record.

Riggs now contends that his statements, contrary to the finding of ALJ Zuber, were not inconsistent with the objective medical evidence of record. He provides several examples to support this argument. First, Riggs points to the treatment notes of Dr. Siddiqui that Riggs had multiple psoriatic lesions on his arms, decreased sensation and reflexes in his extremities, tenderness in his hands and fingers, mildly restricted straight leg raising, tenderness in his sacroiliac joint, fatigue and trigger points associated with fibromyalgia. (TR 704-05, 770-71). Further, Riggs points out that several of his medical treatment providers observed that Riggs was using a walker or a cane in order to ambulate, an observation that nurse Lisa Williams confirmed in her own treatment notes wherein she indicated that Riggs' stability was "abnormal." (TR 770, 772, 777). Thus, such evidence would be supportive of Riggs's testimony that he continues to suffer from severe pain.

As for those limited periods of time when Riggs did not receive active medical treatment, he now argues that the ALJ Zuber was required to consider any alternative explanation of record for such lack of treatment before he drew the negative inference that Riggs did not have the level of treatment that ordinarily a disabled patient would expect to receive. In this instance, Riggs plainly stated that he had no money and no insurance and therefore was only able to irregularly obtain treatment at free clinics for a period of time. (TR 179). This alternative explanation for Riggs' absence of regular, ongoing medical care he now argues must be taken into account and

should not have been the basis for an improper adverse inference under SSR 16-3p, 2016 WL 1119029 at *8-9.

Further, Riggs maintains that his highly limited activities of daily living do not support the negative inference of the ALJ that such activities confirm an RFC to perform a limited range of light work. Riggs points out that the testimony of record confirms that: he cannot adequately work the snaps on his clothing; he has trouble entering and exiting from the shower; he does not cook nor does he perform any household chores; and, he must frequently change positions when he watches television or uses the computer. Riggs adds that the record also confirms that he spends the majority of his time at home

Riggs agrees that he was able on more than one occasion to travel from Indiana to Florida, but he points out that, as he testified, he sat in the front of the aircraft where there was extended leg room and the flight crew permitted him to stand and stretch his legs when he needed to switch position (TR 141, 183). Thus, Riggs maintains that his ability to travel of itself does not contradict the medical source opinions concerning the significant limitations on his ability to walk or stand for significant periods of time. These circumstances do not diminish the credibility of his testimony that he is unable to stand or to walk for extended periods of time so that the ALJ erred in rejecting the credibility of his testimony concerning his symptoms.

For these reasons, Riggs now requests that his case be remanded to the Commissioner for additional proceedings so the Commissioner may provide an adequate explanation for rejecting the opinion of his treating sources and to adequately support the adverse credibility findings.

## Treating Medical Source Rule

Under the treating physician rule, the Commissioner's regulations require that the ALJ will give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record." 20 C.F.R. §§404.1527(d)(2), 416.927(d)(2). *See, Cole v. Astrue*, 661 F.3d 931, 937-39 (6th Cir. 2011) (discussing the treating physician rule). A physician will qualify as a treating source if the claimant sees the doctor "with a frequency consistent with accepted medical practice for the type of treatment/evaluation required for the medical condition." *Smith v. Comm'r of Soc. Security*, 482 F.3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. §404.1502).

The treating physician rule rests on the assumption that a medical professional who has dealt with a claimant over a long period of time for a specific illness will have a deeper insight into the medical condition of the claimant than an individual who may have examined the claimant only once or has merely seen the medical records of the claimant. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (citing *Bowman v. Heckler*, 70 F.2d 564, 568 (5th Cir. 1983)). The opinion of a treating source need not be given complete deference, however, if that opinion lacks objective support in the record, is in tension with a prior opinion of the same treating source, lacks meaningful detail, is entirely conclusory, or is in conflict with other evidence of record showing substantial improvement in the claimant's condition. *See, White v. Comm'r*, 572 F.3d 272, 285-87 (6th Cir. 2009); *Calvert v. Firstar Financial, Inc.*, 409 F.3d 286, 294 (6th Cir. 2005); *Walters v. Comm'r*, 127 F.3d 525, 530 (6th Cir. 1997); *Cutlip v. Sec'y*, 25 F.3d 284 (6th Cir. 1994).

Even in those circumstances in which the Commissioner does not give the opinion of a treating physician controlling weight, it may still be given great weight. *White,* 572 F.3d at 286 (citing SSR 96-2p). When an ALJ declines to give controlling weight to the opinion of a treating source, the ALJ must balance a number of factors to evaluate what weight the opinion should be given. *Wilson,* 378 F.3d at 544. These factors include the length of the treatment relationship, frequency of examination, the nature and extent of the treatment provided, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Cole,* 661 F.3d at 937 (citing 20 C.F.R. §404.1527(d)(2)).

As to the importance of these factors when determining the weight to be given the opinion of a treating source, *Cole* explains:

> [T]he Commissioner imposes on its decision makers a clear duty to "always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion 20 C.F.R. §404.1527(d)(2). Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. S.S.R. 96-2p (1996). This requirement is not simply a formality; it is to safeguard the claimant's procedural rights. It is intended 'to let claimant's understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that ... he is not." *Wilson,* 378 F.3d at 544.

*Cole,* 661 F.3d at 937-38.

When an ALJ fails to conduct a balancing of the above factors to determine the weight that should be awarded to a treating source opinion, such as occurred in *Cole,* the Sixth Circuit has made clear that it does not "hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth the

reasons for the weight assigned to a treating physician's opinion." *Cole,* 661 F.3d at 939 (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (quoting *Wilson,* 378 F.3d at 545)).

In this instance, the Court concludes that ALJ Zuber set forth good reasons in his hearing decision for the weight that he assigned to the various treating sources. For example, the ALJ correctly noted that Dr. Siddiqui only treated Riggs twice during a six-week time frame that began on June 9, 2015 and ended on July 22, 2015 (TR 778, 775) before he rendered his Medical Statement. This relatively-brief treatment history was properly taken into consideration under 20 C.F.R. § 1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to that source's medical opinion.").

Likewise, ALJ Zuber correctly noted in assessing the weight to be given to Dr. Siddiqui's medical opinion that the objective evidence did not support the severe extent of the limitations imposed by Dr. Siddiqui on the claimant. X-Ray imaging of Riggs' extremities failed to reveal any arthritis in his shoulders or knees, a circumstance that suggested Riggs was ambulating without assistance (TR 707-17). In fact, immediately prior to the Medical Statement of Dr. Siddiqui, Riggs was evaluated for possible neurosurgery but was determined to be an inappropriate candidate for such surgery (TR 849-51). That evaluation confirmed that Riggs exhibited normal strength bilaterally in his lower extremities along with normal muscle tone without atrophy and no significant abnormality in his gait. (TR 851). Accordingly, the record appears to the Court to be supportive of the assessment by ALJ Zuber of the limited weight to be given to Dr. Siddiqui's opinions. 20 C.F.R. §1527(c).

The same can be said with respect to the assessment of ALJ Zuber concerning the weight to be given to the opinion of Riggs' chiropractor, Dr. Blake Colwell. Dr. Colwell, as the

Commissioner correctly notes, is not considered under federal regulation, 20 C.F.R. § 404.1513(a), to be an "acceptable medical source," and therefore cannot establish the existence of an impairment. While the ALJ must consider all of the relevant evidence of record, including that evidence from such "other sources" as Dr. Colwell, such consideration requires the ALJ to bear in mind factors such as the length and nature of the treatment history, the consistency of the opinion of the "other source" with the evidence of record and the degree to which the such opinion cites to evidence of record. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

We agree with the Commissioner that the opinion of Dr. Colwell, that Riggs met the criteria of Listings 1.00B or 1.04A simply is not supported by the medical evidence of record. Nowhere in the medical record is there any evidence of nerve root compression. To the contrary, examination on several occasions revealed that Riggs possessed a full range of motion in his lumbar spine along with 5/5 muscle strength in the extremities and negative results on the straight leg raising test. (TR 143, 645). The medical record likewise does not appear to support the severe restrictions that Dr. Cole well placed on the ability of Riggs to sit, stand, or lift. Physical examinations from 2015 and February 2016 indicated no abnormality in Riggs' gait (TR 143). Riggs also exhibited intact muscle strength. (Id). These circumstances strongly undercuts the opinion of Dr. Colwell, which the Commissioner correctly notes was rendered less than two weeks after the doctor first examined Riggs. Accordingly, we cannot say that the decision of ALJ Zuber in according little weight to the opinion of Dr. Colwell was not supported by substantial evidence along with good reasons.

ALJ Zuber also put forward good reasons in his hearing decision to accord little weight to the opinion of nurse practitioner Lisa Williams, who also was not an acceptable medical source under the federal regulations. Her opinion that Riggs satisfied the criteria of Listing 11.4 was

properly discounted where medical records revealed 5\5 motor strength, the absence of gross neurological deficits along with normal gait. (TR 143, 645). Further, the opinion of nurse Williams was noted by her to be based on Riggs' subjective complaints. (TR 747). There also was the problem that nurse Williams' opinion in her medical statement was contradicted at various points by her own treatment records, which indicated that Riggs was asymptomatic and had normal muscle strength and tone. (TR 143). On neurosurgical evaluation, Riggs likewise was noted to have essentially normal lower extremity strength bilaterally with intact sensation. (TR 851). Accordingly, ALJ Zuber had sufficient evidence from the record and offer good reasons to reject the opinion of nurse Williams as well as the opinions of Dr. Siddiqui and Dr. Colwell.

The opinion of each individual was offered based upon a highly limited treatment history. (TR 746-48, 751, 752-53, 775, 778, 749-50). While it is possible to selectively cherry pick small portions of the medical records from the treatment notes of these individuals that arguably would appear supportive of their opinions, the ALJ properly complied with the regulations to review the entire medical record to include those portions that strongly cut against the opinions of Dr. Siddiqui, Dr. Colwell and nurse Williams. (TR 707-717). For example, treatment records repeatedly reflect that Riggs exhibited no significant abnormalities in his gait although he did use a self-prescribed cane, a fact that ALJ Zuber took into account in determining Riggs' RFC in Finding of Fact No. 5. (TR 138-140, 474, 644, 851). The physical limitations that Riggs did exhibit all appear to have been taken into account by the ALJ in the exertional limitations imposed in his RFC, which precluded Riggs from crawling, kneeling, balancing or climbing ladders, ropes or scaffolds and limited his stooping, crouching and climbing ramps or stairs to occasional activity. For these reasons, the Court concludes that the RFC determination of the

ALJ to the extent that Riggs now challenges it under the treating medical source rule must be rejected.

## Credibility of Riggs' Subjective Complaints

Consideration of a claimant's subjective symptoms such as pain is governed by 20 C.F.R. §§404.1529 and 416.929, along with SSR 16-3p.[1]  The cited regulations provide that when the Commissioner considers a claimant's symptoms, including pain, the Commissioner considers the extent to which such symptoms are consistent with the objective medical evidence such as medical signs and laboratory findings as well as other evidence such as medical reports from treating and non-treating sources that discuss the claimant's medical history, diagnosis, prescribed treatment, daily activities, work efforts and the impact of related symptoms on the ability to work.  *Id.*

After the claimant's medical signs and laboratory findings show that a medically determinable impairment exists that could reasonably be expected to produce the described symptoms, such as pain, then the Commissioner will evaluate the intensity and persistence of such symptoms to determine the extent to which they limit the claimant's ability to work.  20 C.F.R. §§ 404.1529(c), 416.929(c).  Beyond merely objective medical evidence, which cannot by itself be a basis to reject the intensity and persistence of a claimant's pain, the Commissioner also considers factors such as: a claimant's daily activities; the location, duration, frequency and intensity of his or her pain; any factors that precipitate or aggravate such pain or other symptoms;

---

[1] SSR 96-7p was superseded effective March 28, 2016 by SSR 16-3p, 2016 WL 1119029 (SSA 2016). Review of the Commissioner's decision is performed by the Court based on the Social Security ruling in effect at the time that hearing decision was rendered by the ALJ on August 24, 2016, more than five months after the adoption of the new ruling.

the type, dosage and effectiveness of any medications the patient has or is taking to alleviate the symptoms; any treatment other than medication the claimant has received for pain or other symptoms; any self-help measures employed by the claimant to reduce his or her symptoms. 20 C.F.R. §416.929(c)(3)(i)-(vi). In considering the above factors, along with the objective medical evidence, the Commissioner also will consider whether any inconsistencies in the evidence exist such as conflicts between the claimant's statements and the rest of the evidence, his or her medical history, signs and laboratory findings and statements to treating and/or non-treating sources about how the alleged symptoms affect the claimant. *Id*.

This procedure for evaluating the subjective symptoms of a claimant has been traditionally referred to in the Sixth Circuit as the two-part test of *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). In *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994), the Sixth Circuit explained in this regard that:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical evidence is of such a severity that can reasonably be expected to produce the alleged disabling pain.

*Id*; *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997).

An administrative law judge properly may consider the credibility of a claimant when evaluating the claimant's subjective complaints, and the federal courts will accord "great deference to that credibility determination." *Warner v. Comm'r*, 375 F.3d 387, 392 (6th Cir. 2004). The findings of the ALJ in this regard are repeatedly held to be accorded great weight, and judicial deference will be given to the ability of the ALJ to observe the demeanor and credibility of the witnesses. *Walters v. Comm'r*, 127 F.2d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y*, 818 F.2d 461, 463 (6th Cir. 1987)). Yet, the ALJ is not accorded absolute

deference. His or her assessment of a claimant's credibility must be supported by substantial evidence. *Beavers v. Sec'y,* 577 F.2d 383, 386-87 (6th Cir. 1978).

When the ALJ "finds contradictions among the medical reports, claimant's testimony and other evidence," the ALJ may properly discount the credibility of the claimant. *Winning v. Comm'r*, 661 F. Supp.2d 807, 822 (N.D. Ohio 2009) (citing *Walters,* 127 F.3d 525, 531 (6th Cir. 1997)). The ALJ, however, is not permitted to render a credibility determination based solely upon a hunch, or "intangible or intuitive notion about an individual's credibility." *Id*. (citing *Rogers,* 486 F.3d at 247) (citing SSR 96-7p)). Under SSR 16-3p, the ALJ must in the hearing decision set forth specific reasons for the credibility determination sufficient to make clear to the claimant and subsequent reviewers the weight that the ALJ gave to the claimant's statements and the reasons for such weight. *Winning*, 661 F. Supp.2d at 823. A mere blanket assertion that a claimant is not believable will not be sufficient under SSR 16-3p. *Id*. (citing *Rogers,* 486 F.3d at 248).

An assessment of the claimant's credibility must be based on a consideration of all the evidence of record. It should include consideration of not only the objective medical evidence but the aforementioned factors of: (1) the daily activities of the claimant; (2) the location, duration, frequency, and intensity of the claimant's symptoms including pain; (3) any factors that precipitate or aggravate the symptoms; (4) the dosage, type, effectiveness and side effects of any medication taken to alleviate such symptoms or pain; (5) treatment that the claimant has received for relief of his or her symptoms; (6) any measures other than treatment that the claimant uses to relieve his or her symptoms; and (7) any other factors relating to the functional limitations and restrictions of the claimant due to such symptoms or pain. *Id*. at 823 n. 14 (citing SSR 96-7p).

When the record establishes consistency between the subjective complaints of the claimant and the other evidence of record, such consistency will tend to support the credibility of claimant, while any inconsistency in this regard will tend to have the opposite effect. *Winning,* 661 F. Supp.2d at 823. The reviewing court does not make its own credibility determinations. *Franson v. Comm'r,* 556 F. Supp.2d 716, 726-27 (W.D. Mich. 2008) (citing *Walters,* 127 F.3d at 528)). The federal courts will not substitute their own credibility determination for that of the ALJ as the fundamental task of the Commissioner is to "resolve conflicts in the evidence and to decide questions of credibility." *Rineholt v. Astrue,* 617 F. Supp.2d 733, 742 (E.D. Tenn. 2009) (citing *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994)). Given the substantial deference accorded the credibility determination of the Commissioner, "'claimants challenging the ALJ's credibility determination face an uphill battle.'" *Franson,* 556 F. Supp.2d at 726-27 (citing *Daniels v. Comm'r,* 152 Fed. Appx. 485, 488 (6th Cir. 2005)).

Once again, we conclude upon review that ALJ Zuber properly considered the record along with all of the factors discussed in 20 C.F.R. § 404.1529 and SSR 13-6p when he evaluated the subjective symptoms and credibility of the claimant. Among the factors considered by the ALJ were Riggs' own statements concerning his limitations, the objective medical evidence of record, the opinion evidence of the various treating sources, Riggs' treatment history and any contradictions between the such medical records, treatment history, other evidence and Riggs' own testimony given at the hearing on March 2, 2016 (TR 152-202).

ALJ Zuber in our view reasonably concluded that the objective medical evidence of record did not support the full extent of Riggs' subjective complaints of pain. The medical evidence revealed only mild to moderate findings that included 5/5 strength without muscle atrophy in the extremities, a full range of motion in the lumbar spine and joints, negative straight

leg raising, and stable and non-tender joints. (TR 645) at most, an MRI diagnostic imaging taken in June 2015 revealed only small disc extrusions, mild disc bulges and mild to moderate facet degenerative changes accompanied by some centrals canal stenosis and foraminal narrowing (TR 848). Cardiopulmonary testing, as noted by the ALJ, confirmed the presence of adequate heart functioning, clear lungs and stable cardiac condition following successful arterial bypass surgeries. (TR 691-92) this objective medical evidence therefore simply was not consistent with the extent of Riggs' subjective complaints.

Riggs' medication treatment history likewise supported the determination of the ALJ concerning the extent of the claimant's subjective complaints. When on his diabetic medication, Lantus, Riggs reported that his diabetic condition was stable and his neuropathic symptoms have begun to improve after a two-month course of Gabapentin. (TR 655, 704, 721, 770). ALJ Zuber properly took into consideration this improvement of Riggs' neuropathy upon use of the appropriate medication dosage. *See Smith v. Commissioner*, 564 Fed. Appx. 758, 763 (6th Cir. 2014) (improvement of the claimant's condition with the use of medication supported the denial of disability benefits).

Briggs' activities of daily living also were appropriately considered by ALJ Zuber under 20 C.F.R. § 404.1529(c)(3)(i). Riggs was able to repeatedly travel from Indiana to Florida and back with such travel including on one occasion a 2-day solo drive in 2013 (TR 639-640). The ALJ also correctly noted that Riggs remained capable to fix simple meals, operate an automobile, shop occasionally, use the Internet, watch television, go swimming and interact appropriately with others. (TR 132-33). While Riggs expressed more extensive limitations in his daily activities, the ALJ was entitled to rely upon this evidence of record in exercising his broad discretion when evaluating the credibility of Riggs' subjective complaints. ALJ Zuber's hearing

decision contains a highly-detailed, thorough review of the medical evidence of record in support of his credibility determination. The ALJ relied upon this thorough review to support his reasoning for rejecting the full credibility of Riggs' testimony concerning the extent of his subjective symptoms.

While the gaps noted in Riggs' treatment history required the ALJ to take into consideration any inability of Riggs to afford treatment on those relatively few occasions, it is clear that the decision of the ALJ does not rest exclusively or even substantially on such treatment gaps, so that any possible error in the manner in which ALJ Zuber assessed these treatment-free time periods when evaluating Riggs' credibility is at most harmless error given the remainder of the hearing decision, which is highly detailed, thorough and complete in its review of the evidence of record, medical and other.

**CONCLUSION**

At step 5 of the sequential evaluation process, the testimony of a vocational expert may be substantial evidence to support a decision of the ALJ if that testimony is made in response to a hypothetical question that accurately portrays the mental and physical impairments of the claimant. *Ealy,* 594 F.3d at 512-13 (citing *Varley v. Sec'y*, 820 F.2d 777, 779 (6th Cir. 1987)). The hypothetical question to the VE is not required to include a list of the claimant's medical conditions. *Wadd v. Comm'r*, 368 F.3d 629, 632-33 (6th Cir. 2004). The ALJ may present a hypothetical to the VE on the basis of the ALJ's assessment of the claimant's credibility. *Jones v. Comm'r*, 336 F.3d 469, 475-76 (6th Cir. 2003) (citing *Townsend v. Sec'y*, 762 F.2d 40, 44 (6th Cir. 1985)). The hypothetical question need not incorporate those limitations asserted by the

claimant that are properly rejected by the ALJ based upon his independent review of the record. *Foster v. Halter*, 279 F.3d 348, 356-57 (6th Cir. 2001).

ALJ Zuber in this instance obtained the testimony of vocational expert (VE) Robert Piper (TR 187-197) at the hearing held on March 2, 2016 (TR 152-202). VE Piper testified that Riggs' prior two occupations as a maintenance mechanic and a refrigeration mechanic involved heavy exertional labor (TR 189). Based on the first hypothetical of the ALJ, which limited Riggs to a restricted range of light exertional work with a sit/stand option, VE Piper concluded that Riggs would not be capable of performing his past relevant work (TR 191). Riggs, however, according to the VE, would remain capable of performing light, unskilled work in occupations such as counter clerk, information clerk and office helper (TR 191).

If the exertional level was further reduced to sedentary work, as suggested in the second hypothetical offered by the ALJ, then VE Piper testified that there still would be jobs available at the sedentary exertional level that Riggs would remain capable of performing, such as assembler, addressor, and inspector (TR 192). Assuming that Riggs would require the use of a cane for walking, but not for standing, the VE testified that under either of the two prior hypotheticals Riggs would remained capable of performing the identified jobs. (TR 193). At that point in the hearing, ALJ Zuber took administrative notice that if the limitations included in the Medical Statement of Dr. Siddiqui were assumed to be true, then there would be no substantial gainful activity that Riggs would be able to perform (TR 194).

Because the VE identified a significant number of jobs that Riggs remains capable of performing based upon an accurate hypothetical offered by the ALJ, the Commissioner satisfied her burden at step five of the sequential evaluation process. The decision of the Commissioner

must be affirmed.  The Court therefore shall by separate order affirm the decision denying

benefits and dismiss the complaint of the Plaintiff with prejudice.

Cc:     Counsel of Record